1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10    ANTHONY SIMMONS,

11                          Plaintiff,

12          v.

13    AUDRY MCQUEEN, et al.,

14                          Defendant.

CASE NO. 3:23-CV-5283-DWC

ORDER ON MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT

15          Currently pending before the Court are Defendant Ramji LLC's Motion for Summary

16    Judgment, which was joined by Defendants Shalleena Esperanz Canizal and Audry McQueen,

17    and Plaintiff Anthony Simmons' Cross-Motion for Limited Summary Judgment. Dkts. 32, 34,

18    38, 43.[1, 2] After consideration of the relevant record, the evidence shows genuine issues of

19    material fact remain as to Simmons' Washington Law Against Discrimination (WLAD) claim,

20    outrage claim, and negligent supervision claim. Accordingly, Defendants' Motion for Summary

21

22          [1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkts. 16, 19.

23          [2] Also pending before the Court are the parties' Joint Rule 37 Discovery Submission (Dkt. 32) and Plaintiff's Motion for Terminating Sanctions (Dkt. 43). These discovery related motions will be addressed in separately filed orders.

24

ORDER ON MOTION AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 1

1   Judgment (Dkt. 34) and Simmons' Cross-Motion for Limited Summary Judgment (Dkt. 38) are

2   denied.

3           **I.**       **Background**

4           In the Complaint, Simmons alleges Defendants McQueen and Canizal, employees of

5   Defendant Ramji, LLC., racially discriminated against Simmons when he tried to enter an

6   AM/PM owned by Ramji, LLC. Dkt. 1. Simmons asserts claims of unlawful discrimination in a

7   place of public accommodation under the WLAD, outrage, and negligent supervision. *Id*.

8           Defendant Ramji filed the Motion for Summary Judgment on March 21, 2024. Dkt. 34.

9   On that same date, Defendants McQueen and Canizal filed their Joinder in Motion for Summary

10  Judgment Dismissal. Dkt. 37. Defendants McQueen and Canizal joined in all Ramji's arguments,

11  except the arguments pertaining to the negligent supervision claim. *Id*. Additionally, McQueen

12  and Canizal submitted argument related to their immunity under Washington's anti-SLAPP laws.

13  *Id*. Simmons filed a Response and Cross-Motion for Limited Summary Judgment. Dkt. 38.

14  Defendants filed a Response to Plaintiff's Cross-Motion and, on May 3, 2024, the parties filed

15  replies. Dkts. 48, 50, 51, 52, 53.[3] The Court heard oral argument on May 14, 2024.

16          **I.**       **Standard of Review**

17          Summary judgment is proper only if the pleadings, discovery, and disclosure materials on

18  file, and any affidavits, show that there is no genuine dispute as to any material fact and that the

19  movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

20  entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

21  showing on an essential element of a claim in the case on which the nonmoving party has the

22

23         [3] Ramji filed a separate memorandum objecting to Simmons' statement of facts. Dkt. 47. Under the Local
Civil Rule 56.1, a party shall not separately file an opposing statement of facts. Therefore, the Court will not

24  consider Ramji's separately filed memorandum opposing Simmons' statement of facts.

1  burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of

2  fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for

3  the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

4  (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

5  metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

6  material fact exists if there is sufficient evidence supporting the claimed factual dispute,

7  requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

8  *Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

9  626, 630 (9th Cir. 1987).

10  **II.    Discussion**

11  A.  *Factual Background*

12  The evidence shows Simmons, a Black male, went to a Mexican restaurant to get some

13  tacos while he was driving to his home. Dkt. 35-1, Simmons Dep. at 4. The restaurant did not

14  provide Simmons with napkins. *Id*. He stopped at the Longview AM/PM, which is owned by

15  Ramji, LLC, to get some napkins. *Id*. at 5. Simmons states he pulled into the loading zone area to

16  enter the store and get some napkins. *Id*. He testified this was not the first time he parked in the

17  loading zone. *Id*. Simmons testified that his purpose for entering the AM/PM was to get courtesy

18  napkins from the concession area; he was not there to buy anything. *Id*. at 5.

19  When Simmons entered the AM/PM, the clerk – McQueen – asked him to move his

20  vehicle. Dkt. 35-1 at 6, Simmons Dep. Simmons states McQueen said that if he touched anything

21  in the store, he would be reported for stealing. *Id*. Simmons did not respond and, as he was

22  exiting the AM/PM, McQueen called Simmons "boy." *Id*. at 7; Dkt. 40 at Exhibit B (Sequence

23  Timeline Video). Simmons re-entered the AM/PM and pushed a sunglass shelf at McQueen out

24

of frustration. Dkt. 35-1 at 7, 10, Simmons Dep; *see also* Dkt. 40 at Exhibit B (Sequence Timeline Video). McQueen then called Simmons "nigger" at least eight times. *See* Dkt. 35-1 at Exhibits 3 and 5 (video surveillance). As a result of Simmons pushing the sunglass shelf, McQueen contends her finger was cut. *See* Dkt. 35-1 at Exhibits 2 (9-1-1 Audio) and 5 (video surveillance).

A review of video surveillance and a transcription of the video surveillance shows that McQueen saw Simmons exit his vehicle and then informed a patron in the store to wait a moment while she "put this guy out." Dkt. 35-1 at 26, Exhibit 5 (video surveillance); Dkt. 40 at Exhibit B (Sequence Timeline Video). McQueen states to Simmons, "Hon, I need you in a parking spot, not my loading zone. I need you in a parking spot. Okay, you're not getting service then." Dkt. 35-1 at 26. McQueen notified Simmons that he was not getting service and could leave her store or go to jail. *Id*. After a short verbal exchange when Simmons was exiting the AM/PM, McQueen said, "Get the fuck out of my store, or you're going to find out, boy." *Id*. at 27. Simmons re-enters the store and pushes or throws an item on the counter towards McQueen. *See* Dkt. 40 at Exhibit B (Sequence Timeline Video). McQueen then called Simmons a "nigger" eight times. Dkt. 35-1 at 27. Canizal called 911 and both McQueen and Canizal followed Simmons out of the AM/PM. *See id*.; *see also* Dkt. 35-1 at Exhibits 6-8 (video surveillance). The video shows McQueen is holding a long stick in her hand. *See* Dkt. 351- at Exhibits 6-8; Dkt. 40 at Exhibit B (Sequence Timeline Video). Simmons did not seek any medical or mental health treatment as a result of the incident. Dkt. 35-1, Simmons dep. at 15.

After the incident, Canizal texted Anjana Sarad,[4] one of the owners, stating that Canzial fixed the sunglasses and there was no damage to anything. Dkt. 35-1 at 51.

---

[4] The Court will refer to Anjana Sarad and Manoj Sarad by the first names to avoid confusion.

ORDER ON MOTION AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 4

1       Manoj Sarad testified that McQueen was hired as a cashier. Dkt. 39-3, M. Sarad Dep. at

2   14. However, Canizal testified that the Sarads allowed Canizal to stay in the parking lot of the

3   AM/PM in exchange for Canizal providing security. Dkt. 39-5, Canizal Dep. at 6.

4       Manoj stated that he never heard McQueen yell at another customer or be aggressive or

5   violent towards somebody. Dkt. 39-3, M. Sarad Dep. at 14. However, there is evidence showing

6   Manoj was present on the AM/PM property when McQueen threatened to shoot someone in the

7   head with a gun. Dkt. 39-3, M. Sarad Dep. at 20; *see also* Dkt. 40 at Exhibit G. Further, Manoj

8   testified that they had a policy prohibiting weapons from entering the AM/PM. Dkt. 39-3, M.

9   Sarad Dep. at 22. But, during an incident at the AM/PM, Manoj directed McQueen or Canizal to

10  get their gun, which was kept in their car on the property. *Id*. at 23-24, 26. Further, Canizal

11  testified that McQueen would occasionally bring a firearm into the store and keep under the cash

12  register; Canizal testified that the Sarads knew McQueen kept a firearm in the AM/PM. Dkt. 39-

13  5, Canizal Dep. at 6-7.

14      When hired, Canizal received a day of training regarding how to use the register, make

15  food, fix the pumps, and clean. *Id*. at 12. Canizal did not receive any customer service training or

16  training related to public accommodation discrimination. *Id*. at 12-13.

17     B.   *Washington Law Against Discrimination (WLAD)*

18      Defendants' first assert that Simmons' WLAD claim should be dismissed because

19  Simmons lacks standing to bring the claim. Dkt. 34. Simmons contends the Court should grant

20  summary judgment in his favor as to the WLAD claim. Dkt. 38.

21      Revised Code of Washington ("RCW") 49.60.030(2) authorizes private plaintiffs to bring

22  suit for violations of the WLAD. "To make out a prima facie case under the WLAD for

23  discrimination in the public accommodations context, the plaintiff must establish four elements:

24

ORDER ON MOTION AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 5

(1) that the plaintiff is a member of a protected class; (2) that the defendant is a place of public accommodation; (3) that the defendant discriminated against the plaintiff, whether directly or indirectly; and (4) that the discrimination occurred 'because of' the plaintiff's status or, in other words, that the protected status was a substantial factor causing the discrimination." *State v. Arlene's Flowers, Inc.*, 193 Wash. 2d 469, 501–02, 441 P.3d 1203, 1220 (2019) (cleaned up).

Here, Defendants do not dispute that Simmons is a member of a protected class. *See* Dkt. 34 at 10. Further, for purposes of summary judgment, Defendants do not dispute that the AM/PM is a place of public accommodation. *Id*. Therefore, at issue are elements 3 -- defendant discriminated against the plaintiff, whether directly or indirectly -- and 4 -- discrimination occurred "because of" the plaintiff's status.

Defendants assert that "some kind of contractual relationship must exist" for a WLAD claim to survive. Dkt. 34 at 10. Defendants argue Simmons does not have standing to pursue a claim under the WLAD because he did not enter the AM/PM with an intent to purchase anything. *Id*. at 10-11. Defendants ask this Court to apply the standard set forth in 42 U.S.C. §1981 to find that there must be a contractual relationship. *See* Dkt. 34.[5] However, unlike §1981, the WLAD does not include language requiring a contractual relationship. Rather, under the WLAD, Simmons is only required to prove that he was deprived of his "right to full enjoyment" of the AM/PM because of his membership in a protected class. *See Johnson v. Grady Way Station, LLC*, 2009 WL 3380641, at *3 (W.D. Wash. Oct. 16, 2009).

In *Johnson*, the Court found that, under the WLAD, unlike federal claims under § 1981, the plaintiff was not required to prove the defendant had refused to sell plaintiff gas because of

---

[5] Section 1981 states, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

his race. 2009 WL 3380641 at *3. The plaintiff in *Johnson* was only required to prove that he

was deprived of his right to the full enjoyment of any of the accommodations, advantages, or

privileges of the gas station. *Id*. Here, there is no dispute Simmons was entering the gas station to

obtain courtesy napkins offered by AM/PM. Defendants failed to show Simmons was not denied

the "right to the full enjoyment of" the AM/PM. For example, Defendants have not provided any

evidence showing courtesy napkins are not an accommodation, advantage, or privilege offered

by AM/PM. Based on the record before the Court, the evidence fails to show Simmons was not

denied the "right to the full enjoyment of" the AM/PM.

The Court, however, finds there is a question of fact regarding whether Defendants

discriminated against Simmons. The evidence shows McQueen saw Simmons and stated she was

going to put Simmons out; she called Simmons "boy" and she used a racial slur at least eight

times during their interaction. The evidence also shows Simmons parked in a loading zone and

McQueen directed him to move his vehicle. While there is a strong inference that McQueen's

conduct toward Simmons was a result of his race, it is a question of fact for the jury to determine

if McQueen's conduct toward Simmons was because he was a member of a protected class or for

some other reasons, such as improperly parking in a loading zone. Therefore, there is a question

of fact regarding whether any denial of the full enjoyment of the AM/PM was racially motivated.

Accordingly, Defendants' Motion for Summary Judgment and Plaintiff's Cross-Motion

are denied as to the WLAD claim.

C. *Outrage*

Defendants next argue Simmons' outrage claim should be dismissed. Dkt. 34. The

elements of the tort of outrage (also known as intentional infliction of emotional distress) are (1)

extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and

(3) the claimant actually suffers severe emotional distress. *Kloepfel v. Bokor*, 149 Wash.2d 192, 195, 66 P.3d 630 (2003). "The law intervenes only where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Saldivar*, 145 Wash. App. at 390.

Defendants argue McQueen's conduct was not enough to give rise to an outrage claim. Dkt. 34. While a "single use of a racial epithet perhaps does not constitute sufficiently outrageous behavior," *Johnson*, 2009 WL 3380641 at *4, Simmons may be able to prove the circumstances surrounding the use of a racial epithet multiple times was enough to make McQueen's conduct sufficiently outrageous. For example, in addition to calling Simmons a "nigger," McQueen threatened to call the police, called Simmons "boy," and the record before the court shows McQueen pursued him with a large stick after he left the AM/PM. The Court finds the evidence is sufficient to create a genuine issue of material fact regarding whether McQueen's conduct was outrageous. Therefore, summary judgment is denied as to the outrage claim.

D.   *Negligent Supervision*

Finally, Defendants assert Simmons' negligent supervision claim should be dismissed. Dkt. 34. "The theory of negligent supervision creates a limited duty to control an employee for the protection of third parties, even where the employee is acting outside the scope of employment." *Garrison v. Sagepoint Fin., Inc.*, 185 Wash.App. 461, 484-85 (2015). To establish a claim for negligent supervision, a plaintiff must show (1) the employee acted outside the scope of his employment, (2) presented a risk of harm; (3) the employer knew, or should have known, in the exercise of reasonable care, that the employee posed a risk to others; and (4) the employer's failure to supervise was a proximate cause of the loss. *Id*.

1        Defendants assert only that McQueen's actions were not reasonably foreseeable. Dkt. 34

2   at 25-28. Evidence shows the Sarads, owners of Ramji, LLC, allowed Canizal and McQueen to

3   stay in the parking lot of the AM/PM in exchange for Canizal and McQueen providing security

4   for the AM/PM. Dkt. 39-5, Canizal Dep. at 6. McQueen would occasionally bring a firearm into

5   the store, which she kept under the cash register. *Id*. at 6-7. The Sarads knew McQueen kept a

6   firearm in the AM/PM. Dkt. 39-5 at 7. There is also evidence showing Manoj was present when

7   McQueen threatened to shoot someone in the head with a gun while acting as security on the

8   AM/PM property. Dkt. 39-3, M. Sarad Dep. at 20; *see also* Dkt. 40 at Exhibit G; Dkt. 39-5,

9   Canizal Dep. at 17. Further, Manoj testified that they had a policy prohibiting weapons from

10  entering the AM/PM. Dkt. 39-3, M. Sarad Dep. at 22. However, prior to the incident involving

11  Simmons, while on AM/PM property, Manoj directed McQueen or Canizal to get their gun

12  during an altercation with another patron. *Id*. at 23-24, 26.

13       Defendants contend the evidence shows only that McQueen reported patrons to the police

14  in an attempt to intimidate the patrons. Dkt. 34 at 26. However, there is evidence, viewed in the

15  light most favorable to Simmons, showing McQueen and Canizal's scope of employment for

16  Ramjii, LLC included duties as security guards for the AM/PM and Ramji, LLC was aware

17  McQueen had previously threatened to shoot an AM/PM patron in the head. Moreover, Ramji,

18  LLC did not provide any customer service training. Therefore, the Court finds Defendants'

19  argument that there is no genuine issue of material fact showing McQueen's actions were

20  reasonably foreseeable is not persuasive. Accordingly, Defendants' Motion for Summary

21  Judgment is denied as to the negligent supervision claim.

22

23

24

1

**III.     Conclusion**

2

For the above stated reasons, Defendants' Motion for Summary Judgment (Dkt. 34) and

3

Plaintiff's Cross-Motion for Limited Summary Judgment (Dkt. 38) are denied.[6]

4

Dated this 21st day of May, 2024.

5

6

David W. Christel
United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

---

[6] McQueen and Canizal argue that Simmons' claim related to fraudulent reporting to law enforcement officers should be dismissed. Dkt. 37. The Court has reviewed the Complaint and does not find such a claim. Therefore, the Court finds McQueen and Canizal's request to dismiss any such claim is moot.

24

ORDER ON MOTION AND CROSS-MOTION
FOR SUMMARY JUDGMENT - 10